WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys at Law
Stephanie D. Gironda, Esq. (SG6829)
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
732.855.6027
Attorneys for Plaintiff, Robert Macan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
------------------------X
                        :
ROBERT MACAN,           :
                        :
        Plaintiff,      :
                        :              Civil Action
v.                      :
                        :        COMPLAINT AND JURY DEMAND
HANSSEM CORPORATION,    :
and JOHN SONG,          :
                        :
        Defendants.     :
                        :
------------------------X
```

Plaintiff, Robert Macan (hereinafter "plaintiff"), by his attorneys, Wilentz, Goldman & Spitzer, P.A., for his Complaint against Hanssem Corporation ("defendant Hanssem") and John Song ("defendant Song")(together "defendants"), alleges as follows:

1. This is an action for interference with plaintiff's rights, and retaliation against plaintiff for his exercise of his rights, under the Families First Coronavirus Response Act ("FFCRA"), 29 U.S.C. §2601, et seq., and disability discrimination, failure to accommodate a disability, and

retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §10:5-1 et seq.

JURISDICTION AND VENUE

2.    This Court has jurisdiction of this action under 28 U.S.C. §1331 as the Complaint asserts claims under the FFCRA, a federal statute.

3.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of costs and interest, exceeds seventy-five thousand dollars, and there is diversity of citizenship between plaintiff and defendants.

4.    This Court also has supplemental jurisdiction over the common law and State statutory claims under 28 U.S.C. §1367.

5.    Venue within the District Court for the District of New Jersey is proper pursuant to 29 U.S.C. §1391, as plaintiff resides in Middlesex County, New Jersey, and plaintiff worked for defendants in Middlesex County, New Jersey; defendant Song resides in New Jersey; defendant Hanssem is incorporated and has its principal place of business in New Jersey; and defendants do business in New Jersey, including operating facilities located in Edison and South Plainfield, Middlesex County, New Jersey; and conduct business from other locations in New Jersey; and the claims arose in New Jersey.

-2-

#11702694.1

<u>THE PARTIES</u>

6.   Plaintiff is an individual who worked as a service technician for defendant Hanssem for twenty-six (26) years.

7.   Defendant Hanssem is a corporation engaged in the business of manufacturing and distributing cabinets that is organized and existing under the laws of the State of New Jersey, and has its principal place of business at Edison, New Jersey.

8.   Defendant John Song is Defendant Hanssem's Accounting/Human Resources Manager.

<u>FACTS COMMON TO ALL COUNTS</u>

9.   Plaintiff has cystic fibrosis.

10.  Cystic fibrosis can result in fatal complications such as liver disease and diabetes.

11.  The defective gene responsible for cystic fibrosis leads to the creation of thicker, stickier mucus that is difficult to cough out of the lungs.

12.  Cystic fibrosis can make breathing difficult, and lead to severe lung infections.

13.  Cystic fibrosis is listed on the website of the Centers for Disease Control and Prevention as an underlying medical condition that may put an individual who contracts the novel Coronavirus ("COVID-19") at increased risk for severe

-3-

illness, should an individual with cystic fibrosis contract COVID-19.

14. Plaintiff was hired by defendant Hanssem on June 12, 1993 as a Service Technician.

15. Plaintiff was a hard-working employee throughout his employment by defendant Hanssem.

16. Plaintiff never took a sick day during his employment at defendant Hanssem.

17. Plaintiff was never late to work during his employment at defendant Hanssem.

18. Plaintiff received a bonus based on his job performance each year he was employed by defendant Hanssem.

19. Plaintiff received a raise based on his job performance each year he was employed by defendant Hanssem.

20. Plaintiff consistently worked longer than eight hours each day for defendant Hanssem in order to ensure that defendant Hanssem's customers received excellent customer service.

21. Plaintiff received letters of gratitude from customers and dealers who praised the customer service he provided on defendant Hanssem's behalf.

22. Plaintiff was never given an oral warning by defendants regarding his work performance.

23. Plaintiff was never given a written warning by defendants regarding his work performance.

-4-

24.  At or around February/March 2020, COVID-19 began to spread within the United States, including within the State of New Jersey.

25.  On March 9, 2020, in his Executive Order 103, New Jersey State Governor Philip Murphy ("Governor Murphy") declared a state of emergency in New Jersey as a result of the COVID-19 pandemic.

26.  Plaintiff became concerned about his physical presence in the workplace because of his serious health condition, cystic fibrosis.

27.  In March and April 2020, defendants did not take any measures, as recommended by the Centers for Disease Control ("CDC") or any other health authority, in order to protect their employees from the spread of COVID-19.

28.  In March and April 2020, defendants did not require that their employees maintain a six foot social distance from others.

29.  In March and April 2020, defendants did not make all reasonable efforts to frequently use sanitizing products on common surfaces.

30.  In March and April 2020, defendants did not provide any instruction for employees, such as plaintiff, who visited customers' homes as part of their job duties, as to how to prevent contracting COVID-19 during these visits.

-5-

31.   In March 2020, plaintiff and other employees of defendants suspected another employee at defendants' workplace contracted COVID-19.

32.   Defendants did not inform the employees at defendants' workplace that they may have come in contact with an employee who may have contracted COVID-19, and should take precautionary measures.

33.   On March 9, 2020, in his Executive Order 104, Governor Murphy closed all schools effective March 18, 2020 in New Jersey because of the COVID-19 pandemic.

34.   Plaintiff has two young school age children who attend school.

35.   On March 18, 2020, through the remainder of the school year, plaintiff's children attended school remotely and not in-person.

36.   When Governor Murphy ordered New Jersey's schools closed, plaintiff was required to stay home with his two young school age children in order to provide child care, while they attended school remotely.

37.   On March 19, 2020, plaintiff submitted a note dated March 18, 2020, from his doctor, Sabiha Hussain, M.D., the Director of the Rutgers Health Adult Cystic Fibrosis Program, to Young Jin Kim, defendants' Quality Control Manager.

38.  Plaintiff copied Young Kim, defendants' Production Manager, on the email to which his March 18, 2020 doctor's note was attached.

39.  Plaintiff's March 18, 2020 doctor's note stated that the CDC "has issued guidelines for people who are at higher risk—including avoiding large gatherings, such as the workplace and staying home as much as possible as extra precautions to put distance between themselves and other people."

40.  The March 18, 2020 note from plaintiff's doctor stated that because plaintiff has cystic fibrosis, he is at greater risk of developing serious complications, should he contract COVID-19.

41.  The March 18, 2020 note from plaintiff's doctor requested that "all possible accommodations should be made out of consideration for Mr. Macan's medical condition."

42.  Dr. Hussain requested, on plaintiff's behalf, that defendants provide plaintiff with a temporary leave of absence from work.

43.  In the March 19, 2020 email that accompanied plaintiff's March 18, 2020 doctor's note, plaintiff indicated that starting April 1, 2020, he intended to take Emergency Paid Sick Leave ("EPSL") leave and Expanded Family Medical Leave ("EFML") under the FFCRA.

-7-

44.  Prior to emailing the March 18, 2020 doctor's note to Young Jin Kim, plaintiff had not informed Young Jin Kim that he has a disability, cystic fibrosis.

45.  On March 23, 2020, Young Jin Kim forwarded plaintiff's email and leave request under the FFCRA to John Song, defendants' Accounting/Human Resources Manager.

46.  Prior to Young Jin Kim's forwarding of plaintiff's doctor's note dated March 18, 2020, plaintiff had not informed defendant Song that he has a disability, cystic fibrosis.

47.  Upon information and belief, defendant Song has had no formal training in regard to his role as a human resources manager.

48.  Defendants' employee handbook, containing defendants' employment policies, including those in regard to harassment and discrimination, has not been updated since 1999.

49.  During the entirety of plaintiff's employment at defendant Hanssem, defendant Hanssem has not provided training on harassment and discrimination for its employees.

50.  During the entirety of plaintiff's employment at defendant Hanssem, defendant Song, as Human Resources Manager, has never provided training on harassment and discrimination for defendant Hanssem's employees.

-8-

51.   On or about March 30, 2020, plaintiff called defendant Song regarding the status of his leave request under the FFCRA.

52.   On March 30, 2020, defendant Song emailed plaintiff and acknowledged that plaintiff had called him regarding the status of his leave request under the FFCRA.

53.   In his March 30, 2020 email, defendant Song did not provide any information as to the status of plaintiff's leave request.

54.   In defendant Song's March 30, 2020 email he stated "We are trying to sort out a lot of things."

55.   In defendant Song's March 30, 2020 email, he requested that plaintiff "Please forward any information that would be beneficial to me to know," in regard to the FFCRA.

56.   In response to defendant Song's email, plaintiff forwarded a link to the United States Department of Labor website that contained information about the FFCRA.

57.   The United States Department of Labor website enabled defendant Song to correctly advise plaintiff that, as of April 1, 2020, he would be entitled to receive two weeks, up to 80 hours, of EPSL under the FFCRA because his doctor had advised him to self-quarantine.

58.   Defendant Song did not advise plaintiff that, as of April 1, 2020, he would be entitled to receive two weeks, up to

-9-

80 hours, of EPSL under the FFCRA because his doctor had advised him to self-quarantine.

59.   The United States Department of Labor website advised that, as of April 1, 2020, employees were entitled to utilize accumulated unused paid time, either before or after they were entitled to take EPSL under the FFCRA.

60.   Defendant Song did not advise plaintiff that, as of April 1, 2020, plaintiff was entitled to take his accumulated unused paid time, either before or after he was entitled to take EPSL under the FFCRA.

61.   The United States Department of Labor website advised that as of April 1, 2020, employees were entitled to utilize up to ten additional weeks of paid leave, EFML, after the expiration of their EPSL, if they were unable to work due to a bona fide need for leave to care for a child whose school or child care provider is closed or unavailable for reasons related to COVID-19.

62.   Defendant Song did not advise plaintiff that, as of April 1, 2020, plaintiff was entitled to take up to ten additional weeks of paid leave, EFML, after the expiration of his EPSL, if he was unable to work due to a bona fide need for leave to care for a child whose school or child care provider is closed or unavailable for reasons related to COVID-19.

-10-

63.  On April 1, 2020, plaintiff emailed defendant Song and advised him that beginning April 1, 2020, he was entitled to EPSL under the FFCRA because he needed to quarantine because of his health condition due to COVID-19.

64.  On April 1, 2020, plaintiff emailed defendant Song and asked him if there was any specific documentation that defendant Song needed in addition to the doctor's note that plaintiff had already provided to defendant Song to enable defendant Song to approve plaintiff's leave.

65.  On April 9, 2020, plaintiff sent an email to defendant Song to confirm that defendant Song had received his April 1, 2020 email.

66.  On April 9, 2020, plaintiff sent an email to defendant Song asking whether defendant Song needed any additional forms completed to allow plaintiff to begin his FFCRA leave.

67.  Under the FFCRA, defendants were required to respond to plaintiff's request for leave, pursuant to  the Family and Medical Leave Act, within five (5) business days of his request.

68.  Defendants did not respond to plaintiff's request for leave within five (5) business days of his request.

69.  On April 9, 2020, 21 days after he requested leave under the FFCRA, plaintiff received a letter from defendants.

70.  Defendants' April 9, 2020 letter did not respond to plaintiff's request for leave under the FFCRA.

-11-

71.  Defendants' April 9, 2020 letter terminated plaintiff, effective April 10, 2020.

72.  Defendants' April 9, 2020 letter alleged that plaintiff was terminated due to the economic impact of COVID-19.

73.  Defendants' April 9, 2020 letter alleged that plaintiff was terminated because of "fiscal problems."

74.  Defendants' statement in their April 9, 2020 letter to plaintiff that he was terminated from employment because of the economic impact of COVID-19 on defendant Hanssem is not true.

75.  In April 2020 and May 2020, defendants attempted to hire/and or hired at least six (6) new employees.

76.  In April 2020 and May 2020, defendants posted advertisements for 6 different positions on glassdoor.com.

77.  In April 2020 and May 2020, defendants posted advertisements for positions that included some of the same job responsibilities as those of a Service Technician.

78.  Defendants retained another service technician who worked for defendant Hanssem, and did not terminate him when they terminated plaintiff.

79.  The service technician retained by defendants did not request leave.

80.  The service technician retained by defendants is not disabled.

-12-

81.  The service technician retained by defendants has far less seniority than did plaintiff.

82.  The service technician retained by defendants does not possess the skills necessary to perform all of the job duties that are the responsibility of a service technician.

83.  Plaintiff supervised the service technician who defendant Hanssem retained instead of plaintiff.

84.  Plaintiff's counsel spoke to defendant Song on May 20, 2020, in regard to plaintiff's claims against defendants.

85.  Defendant Song admitted in the May 20, 2020 telephone call with plaintiff's counsel that defendants "violated some laws."

86.  Defendant stated in the May 20, 2020 telephone call with plaintiff's counsel that defendants "want to make this right."

87.  Despite defendant Song's admission that defendants "violated some laws" and "wanted to make this right," defendant Song did not offer to rehire plaintiff or provide him with a severance that would compensate him for his job loss.

#11702694.1

## FIRST COUNT

### Violation of the Families First Coronavirus Response Act ("FFCRA"): Unlawful Interference, Restraint, and Denial of FFCRA Rights (Emergency Paid Sick Leave)

88.  Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 87 above as if set forth at length herein.

89.  As set forth above, as a result of defendants' actions, including, but not limited to, their failure to notify plaintiff of his FFCRA rights and subsequent termination of him, defendants unlawfully interfered with, restrained, and denied the exercise of and/or plaintiff's attempt to exercise rights provided by the FFCRA.

90.  Defendant Hanssem, a private employer with fewer than 500 employees, is an employer subject to the FFCRA.

91.  Defendant Song, a supervisor who acted, directly and indirectly, in the interests of defendant Hanssem, is individually liable under the FFCRA.

92.  Plaintiff, who worked for his employer more than 30 days, and was advised by his healthcare provider that he should quarantine because he has cystic fibrosis, is an employee who qualified for Emergency Paid Sick Leave under the FFCRA.

93.  Under the FFCRA Plaintiff was entitled to Emergency Paid Sick Leave at his regular rate of pay for two weeks, up to

-14-

80 hours, because he was unable to work because he was quarantined pursuant to the advice of his health care provider.

94.  Defendants failed to notify plaintiff that he was entitled to take Emergency Paid Sick Leave under the FFCRA when he requested to take leave pursuant to the FFCRA.

95.  Defendants denied plaintiff Emergency Paid Sick Leave which he had requested, and to which he was entitled, under the FFCRA when defendants terminated Plaintiff.

96.  An employer who violates the mandatory sick pay provisions or the anti-retaliation provisions of the FFCRA is entitled to damages as provided in the Fair Labor Standards Act ("FLSA").

97.  By and through the conduct described above, Defendants violated the FFCRA by failing to provide plaintiff with Emergency Paid Sick Leave.

98.  Defendants failed to act in good faith and had no reasonable grounds to believe that their actions did not violate the law.

99.  By reason of defendants' actions described above, plaintiff has suffered and continues to suffer economic losses compensable under the FFCRA.

**WHEREFORE,** plaintiff demands judgment against defendants, jointly and severally, as follows:

-15-

A.   Full compensation for back pay, front pay, benefits and remuneration;

B.   Liquidated damages in an additional amount equal to the wages owed;

C.   Pre-judgment and post-judgment interest;

D.   Reasonable attorneys' fees and costs; and

E.   Such other legal and equitable relief as the Court may deem just and proper.

**SECOND COUNT**

**Violation of the Families First Coronavirus Response Act ("FFCRA"): Unlawful Interference, Restraint, and Denial of FFCRA Rights (Expanded Family and Medical Leave)**

100. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 99 above as if set forth at length herein.

101.  As set forth above, as a result of defendants' actions, including, but not limited to, their failure to notify plaintiff of his FFCRA rights and subsequent termination of him, defendants unlawfully interfered with, restrained, and denied the exercise of and/or plaintiff's attempt to exercise rights provided by the FFCRA.

102. Defendant Hanssem, a private employer with fewer than 500 employees, is an employer subject to the FFCRA.

103. Defendant Song, a supervisor who acted, directly and indirectly, in the interests of defendant Hanssem, is individually liable under the FFCRA.

104. Plaintiff, who worked for his employer more than 30 days, and was unable to work due to a bona fide need for leave to care for a child whose school or child care provider is closed or unavailable for reasons related to COVID-19, is an employee subject to the FFCRA.

105. Under the FFCRA, in addition to Emergency Paid Sick leave, plaintiff was entitled to 10 weeks of Expanded Family and Medical Leave because he was unable to work because of a bona fide need for leave to care for a child whose school or child care provider is closed or unavailable for reasons related to COVID-19.

106. Defendants failed to notify plaintiff that he was entitled to take ten weeks of Expanded Family and Medical Leave pursuant to the FFCRA when plaintiff requested leave under the FFCRA.

107. Defendants denied plaintiff Expanded Family and Medical Leave which he had requested, and to which he was entitled, under the FFCRA, when defendants terminated plaintiff.

-17-

108. Defendants failed to act in good faith and had no reasonable grounds to believe that their actions did not violate the law.

109. An employer who violates the Expanded Family Medical Leave provisions of the FFCRA is considered to have violated the Family and Medical Leave Act ("FMLA").

110. By and through the conduct described above, defendants violated the FFCRA by failing to provide plaintiff with Expanded Family and Medical Leave.

111. By reason of defendants' actions described above, plaintiff has suffered and continues to suffer economic losses compensable under the FFCRA.

**WHEREFORE,** plaintiff demands judgment against defendants, jointly and severally, as follows:

A.   Full compensation for back pay, front pay, benefits and remuneration;

B.   Liquidated damages in an additional amount equal to the wages owed;

C.   Pre-judgment and post-judgment interest;

D.   Reasonable attorneys' fees and costs; and

E.   Such other legal and equitable relief as the Court may deem just and proper.

-18-

## <u>THIRD COUNT</u>

### Violation of the Families First Coronavirus Response Act ("FFCRA"): Retaliation for Requesting Emergency Paid Sick Leave and Expanded Family and Medical Leave

112. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 111 above as if set forth at length herein.

113.  As set forth above, as a result of defendants' actions, including, but not limited to, their termination of plaintiff after he requested Emergency Paid Sick Leave, and Expanded Family and Medical Leave, under the FFCRA, defendants retaliated against plaintiff when he exercised his rights as provided by the FFCRA.

114. Defendant Hanssem, a private employer with fewer than 500 employees, is an employer subject to the FFCRA.

115. Defendant Song, a supervisor who acted, directly and indirectly, in the interests of defendant Hanssem, is individually liable under the FFCRA.

116. Plaintiff, who worked for his employer more than 30 days, and was advised by his healthcare provider that he should quarantine because he has cystic fibrosis, is an employee who qualified for Emergency Paid Sick Leave under the FFCRA. Further, plaintiff who was unable to work due to a bona fide need for leave to care for a child whose school or child care provider is closed or unavailable for reasons related

-19-

to COVID-19, is an employee who qualified for Expanded Family and Medical Leave under the FFCRA.

117. On April 9, 2020, plaintiff was terminated while out on what defendant should have designated as protected leave under the FFCRA.

118. By and through the conduct described above, defendants retaliated against plaintiff for his request for Emergency Paid Sick Leave and Expanded Family and Medical Leave under the FFCRA.

119. Defendants failed to act in good faith and had no reasonable grounds to believe that their actions did not violate the law.

120. By reason of defendants' actions described above, plaintiff has suffered and continues to suffer economic and other losses compensable under the FFCRA.

**WHEREFORE,** Plaintiff demands judgment against defendants, jointly and severally, as follows:

A.   Full compensation for front pay, back pay, benefits and remuneration;

B.   Compensatory and consequential damages;

C.   Punitive Damages;

D.   Liquidated damages in an additional amount equal to the wages owed;

E.   Pre-judgment and post-judgment interest;

-20-

F.   Reasonable attorneys' fees and costs; and

G.   Such other legal and equitable relief as the Court may deem just and proper.

### FOURTH COUNT

### Violation of The New Jersey Law Against Discrimination ("NJLAD"):  Disability Discrimination

121. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 120 above as if set forth at length herein.

122. By and through the conduct described above, defendant Hanssem discriminated against plaintiff by reason of his disability, cystic fibrosis, by failing to accommodate him, and by terminating his employment while he was out on leave as a result of that disability, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §10:5-1 et seq.

123. Defendants failed to implement any effective preventative or remedial measures to protect against disability harassment, discrimination, or retaliation, including, but not limited to:

a.   failure to adequately train supervisory personnel;

b.   failure to institute or implement effective policies or procedures regarding disability and other discrimination, or retaliation, and the reporting and investigation of complaints of same;

-21-

c.   failure to adequately monitor or supervise the illegal activities and discriminatory and retaliatory actions of supervisory personnel;

d.   failure to provide adequate training to recognize, address, rectify and/or prevent illegal, discriminatory or retaliatory conduct; and

e.   failure to adequately rectify, discipline or prevent known discriminatory or retaliatory conduct by supervisory personnel.

124. The aforesaid conduct of defendant Hanssem constitutes actual participation in, and/or willful indifference to, egregious conduct by upper level management, including, but not limited to, defendant John Song, in violation of plaintiff's rights, sufficient to subject defendant Hanssem to punitive damages under the NJLAD and Lehman v. Toys 'R' Us, Inc., 132 N.J. 587, 625 (1993).

125. By reason of defendant Hanssem's actions described above, plaintiff has suffered, and continues to suffer, economic losses, harm to career, harm to reputation, bodily injury with physical manifestations, pain and suffering, emotional distress, personal and social disruption, and other such damages compensable under the NJLAD.

**WHEREFORE,** plaintiff demands judgment against defendant Hanssem as follows:

-22-

A.   Full compensation for front pay, back pay, benefits and remuneration;

B.   Compensatory and consequential damages;

C.   Punitive damages, as defendants' behavior was especially egregious and engaged in by upper level management;

D.   Pre-judgment and post-judgment interest;

E.   Reasonable attorneys' fees and costs, enhanced pursuant to Rendine v. Pantzer; and

F.   Such other legal and equitable relief as the Court may deem just and proper.

**FIFTH COUNT**

**Violation of the New Jersey Law Against Discrimination ("NJLAD"): Failure to Accommodate a Disability**

126. Plaintiff repeats and realleges each of the allegations in Paragraphs 1 through 125 above as if set forth at length herein.

127. By and through the conduct described above, defendant Hanssem failed and refused to accommodate plaintiff's disability, cystic fibrosis, by failing to engage in the interactive process with him by, inter alia, improperly failing to respond to his request for temporary leave; and ultimately by terminating him instead of responding to his request for leave as an accommodation; and failing and refusing to accommodate his disability, in violation of the NJLAD, N.J.S.A. 10:5-1 et seq.

-23-

128. Defendants failed to implement any effective preventative or remedial measures to protect against disability harassment, discrimination, or retaliation, including, but not limited to:

       a.  failure to adequately train supervisory personnel;

       b.  failure to institute or implement effective policies or procedures regarding disability and other discrimination, or retaliation, and the reporting and investigation of complaints of same;

       c.  failure to adequately monitor or supervise the illegal activities and discriminatory and retaliatory actions of supervisory personnel;

       d.  failure to provide adequate training to recognize, address, rectify and/or prevent illegal, discriminatory or retaliatory conduct; and

       e.  failure to adequately rectify, discipline or prevent known discriminatory or retaliatory conduct by supervisory personnel.

129. The aforesaid conduct of defendant Hanssem constitutes actual participation in, and/or willful indifference to, egregious conduct by upper-level management, including, but not limited to, defendant John Song, in violation of plaintiff's rights, sufficient to subject defendant Hanssem to punitive damages under the NJLAD.

-24-

130. By reason of defendant Hanssem's actions described above, plaintiff has suffered, and continues to suffer, economic losses, harm to career, harm to reputation, bodily injury with physical manifestations, pain and suffering, emotional distress, personal and social disruption, and other such damages compensable under the NJLAD.

**WHEREFORE,** plaintiff demands judgment against defendant Hanssem, as follows:

A.   Full compensation for front pay, back pay, benefits and remuneration;

B.   Compensatory and consequential damages;

C.   Punitive damages, as defendants' behavior was especially egregious and engaged in by upper level management;

D.   Pre-judgment and post-judgment interest;

E.   Reasonable attorneys' fees and costs, enhanced pursuant to Rendine v. Pantzer; and

F.   Such other legal and equitable relief as the Court may deem just and proper.

### SIXTH COUNT

#### Violation of The New Jersey Law Against Discrimination ("NJLAD"):Retaliation

131. Plaintiff repeats and realleges each of the allegations in paragraphs 1 through 130 above as if set forth at length herein.

-25-

132. By and through the conduct described above, defendant Hanssem violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §10:5-1 et seq., by terminating plaintiff in retaliation for asserting his legally protected rights, including: requesting the accommodation of temporary medical leave; and requesting to be returned to work after taking protected medical leave for his disability, cystic fibrosis.

133. Defendants failed to implement any effective preventative or remedial measures to protect against disability harassment, discrimination, or retaliation, including, but not limited to:

     a.  failure to adequately train supervisory personnel;

     b.  failure to institute or implement effective policies or procedures regarding disability and other discrimination, or retaliation, and the reporting and investigation of complaints of same;

     c.  failure to adequately monitor or supervise the illegal activities and discriminatory and retaliatory actions of supervisory personnel;

     d.  failure to provide adequate training to recognize, address, rectify and/or prevent illegal, discriminatory or retaliatory conduct; and

-26-

e.   failure to adequately rectify, discipline or prevent known discriminatory or retaliatory conduct by supervisory personnel.

134. The aforesaid conduct of defendants constitutes actual participation in, and/or willful indifference to, egregious conduct by upper-level management, including, but not limited to, defendant John Song, in violation of plaintiff's rights, sufficient to subject defendants to punitive damages under the NJLAD.

135. By reason of defendants' actions described above, plaintiff has suffered, and continues to suffer, economic loss, harm to career, harm to reputation, bodily injury with physical manifestations, pain and suffering, emotional distress, personal and social disruption, and other such damages compensable under the NJLAD.

**WHEREFORE,** plaintiff demands judgment against defendant Hanssem as follows:

A.   Full compensation for front pay, back pay, benefits and remuneration;

B.   Compensatory and consequential damages;

C.   Punitive damages, as defendant Hanssem's behavior was especially egregious and engaged in by upper level management;

D.   Pre-judgment and post-judgment interest;

E.  Reasonable attorneys' fees and costs, enhanced pursuant to <u>Rendine v. Pantzer</u>; and

F.  Such other legal and equitable relief as the Court may deem just and proper.

### SEVENTH COUNT

**Violation of The New Jersey Law Against Discrimination ("NJLAD"): Individual Liability for Aiding and Abetting NJLAD Violations**

136. Plaintiff repeats and realleges each of the allegations in Paragraphs 1 through 135 above as if set forth at length herein.

137. Defendant John Song aided, abetted, incited, compelled and coerced the doing of acts forbidden under <u>N.J.S.A.</u> §10:5-1 <u>et seq.</u>, by defendant Hanssem Corporation, in violation of <u>N.J.S.A.</u> §10:5-12(e).

138. Said defendant is individually liable to plaintiff for his violations of the NJLAD.

139. The aforesaid conduct constitutes actual participation in, and/or willful indifference to, egregious conduct by defendant Song, as a member of upper level management, in violation of plaintiff's rights, sufficient to subject said defendant to punitive damages under the NJLAD.

140. By reason of said defendant's actions described above, plaintiff has suffered, and continues to suffer, economic loss, harm to career, harm to reputation, bodily injury with physical

-28-

manifestations, pain and suffering, emotional distress, personal and social disruption, and other such damages compensable under the NJLAD.

**WHEREFORE,** plaintiff demands judgment against defendant John Song as follows:

A.   Full compensation for front pay, back pay, benefits and remuneration;

B.   Compensatory and consequential damages;

C.   Punitive damages, as defendant's behavior was especially egregious and engaged in by upper level management;

D.   Pre-judgment and post-judgment interest;

E.   Reasonable attorneys' fees and costs, enhanced pursuant to <u>Rendine v. Pantzer</u>; and

F.   Such other legal and equitable relief as the Court may deem just and proper.

-29-

#11702694.1

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

WILENTZ, GOLDMAN & SPITZER, P.A.
Attorneys for Plaintiff, Robert Macan


By: */s/Stephanie D. Gironda*
    STEPHANIE D. GIRONDA

Dated:  February 10, 2021

-30-